**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x

**KELLY MCLEAN,** on behalf of herself and all others similarly situated,

Plaintiff,

**-v.-**

**ALASTIN SKINCARE, INC. and GALDERMA LABORATORIES, L.P.,**

Defendant.

--------------------------------------------------------------x

Case No. __________

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff **KELLY MCLEAN** ("Plaintiff" or "Mr. Soto"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, brings this action against **ALASTIN SKINCARE, INC.** and **GALDERMA LABORATORIES, L.P.** ("**ALASTIN**" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., arising from Defendant's failure to design, construct, maintain, and operate its ecommerce website, www.alastin.com, in a manner that is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff **Kelly McLean** is a resident of Bronx County and is permanently disabled due to Bietti's Crystalline Dystrophy, a rare inherited retinal degenerative disorder that causes progressive loss of retinal function and severe decline in visual acuity. Her treating optometrist at Bronx Eye Associates confirms that Ms. McLean now has "only minimal residual perception of light and shapes" and is "almost completely blind," with constricted visual fields, impaired night vision, and profound functional sight loss. Her condition is permanent, irreversible, and progressive. Exhibit A.

2. As a legally blind individual, Ms. McLean relies exclusively on screen-reading

software and keyboard navigation to access digital content independently. Because she cannot visually interpret website content, she depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive elements, and screen-reader-compatible navigation. For Ms. McLean, accessible coding is not optional—it is the only means by which she can access the internet.

3. In 2026, Ms. McLean sought to independently browse and purchase clinically tested anti-aging skincare products suitable for her severe visual impairment. Due to her near-total blindness, she cannot safely browse physical retail stores, read product packaging, compare formulations, or evaluate ingredient lists without accessible digital interfaces. She specifically attempted to research and purchase several ALASTIN Skincare products—including **Restorative Skin Complex with TriHex+™**, **Ultra Nourishing Moisturizer**, and **A-LUMINATE Brightening Serum**—because ALASTIN markets these products as dermatologist-endorsed, clinically validated, and designed to improve skin texture, hydration, elasticity, and tone. These characteristics are particularly important to Plaintiff, who experiences skin sensitivity and dryness associated with her degenerative ocular condition and requires gentle, clinically tested formulations.

4. Plaintiff desired to purchase these products from Defendants' website, www.alastin.com, because ALASTIN's ecommerce platform provides exclusive access to detailed clinical claims, ingredient breakdowns, usage instructions, promotional bundles, and product-specific educational materials that are not reliably available through third-party retailers. Additionally, ALASTIN's website offers direct-to-consumer purchasing, subscription options, and promotional pricing that Plaintiff cannot obtain elsewhere. For a blind consumer who cannot visually inspect products in stores, the ability to independently review this information online is essential to making informed purchasing decisions.

5. According to the United States Census Bureau, millions of Americans live with

significant visual impairments, including more than two million who are legally blind. Congress enacted the ADA to eliminate discrimination against individuals with disabilities and ensure full integration and equal access. The Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, and activities offered by public accommodations on the web.

6. The internet has become an indispensable tool for modern life. It is a primary means of shopping, banking, learning, communicating, and accessing essential goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in society on equal terms. When websites are not designed to be compatible with screen-reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users take for granted.

7. Screen-reading software works by converting digital content into synthesized speech or refreshable Braille. For this technology to function, website content must be capable of being rendered into text. Websites that lack alternative text for images, contain unlabeled buttons or links, use improper heading structure, rely on mouse-only interactions, or contain broken ARIA references cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites, and are denied equal access to the goods and services offered.

8. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

9. Plaintiff brings this civil action against **Alastin Skincare, Inc.** and its parent and controlling affiliate, **Galderma Laboratories, L.P.**, for their failure to design, construct, maintain,

and operate their highly interactive retail ecommerce platform www.alastin.com, —in a manner that is fully accessible to blind and visually impaired individuals. Defendants' denial of full and equal access to their Website—and therefore to the goods and services offered therein—constitutes a violation of Plaintiff's rights under Title III of the ADA.

10. On **June 11, 2026**, **June 13, 2026**, and **August 12, 2026**, Plaintiff attempted to access Defendants' Website, www.alastin.com using screen-reader technology to research and purchase ALASTIN's anti-aging skincare products. She attempted to review product descriptions, clinical claims, ingredient lists, pricing, and available formulations before completing a purchase.

11. During each of these attempts, Plaintiff encountered multiple accessibility barriers that prevented her from independently navigating the Website. NVDA announced product images only as "image," with no descriptive alternative text; interactive elements were announced only as "button," "link," or "blank," without context; dynamic pop-ups appeared without screen-reader alerts; and moving carousel content shifted automatically without pause or stop controls. Plaintiff was unable to identify product differences, understand clinical claims, operate subscription options, or activate "Add to Bag" functionality. These barriers prevented her from forming a coherent mental map of the Website and from completing a purchase.

12. These barriers were not isolated to the pages Plaintiff attempted to access. Multiple subsequent WAVE audits revealed hundreds of errors across ALASTIN's product pages, including missing alternative text, empty buttons, empty links, broken ARIA references, missing form labels, inaccessible dynamic content, and severe contrast failures. These systemic defects confirm that the Website is not coded in a manner compatible with screen-reader technology and denies blind users equal access to essential product information.

13. The accessibility failures extended across product pages, category pages, navigation menus, promotional pages, clinical-study pages, and informational pages. The WAVE reports

documented widespread violations of WCAG 2.1, including inaccessible tab panels, improper heading structure, unlabeled interactive elements, and dynamic content changes without warning. These pervasive barriers demonstrate that Defendants' Website is not designed, constructed, maintained, or operated in a manner compatible with screen-reader technology and denies blind users equal access to the goods and services offered. Exhibit B

14. The Website also contained severe visual accessibility hazards, including moving carousel content lacking pause/stop controls, dynamic pop-ups without screen-reader alerts, and unlabeled interactive elements—each of which violates WCAG 2.1 and prevents blind users from safely navigating the site.

15. Defendants operate a retail ecommerce platform through which consumers can browse skincare products, review product-specific information, and purchase items directly online. Plaintiff specifically sought out Defendants because of their advertised selection of clinically tested, dermatologist-endorsed skincare products, which she needs due to her profound visual impairment and reliance on accessible online shopping.

16. Plaintiff seeks a permanent injunction requiring Defendants to revise their corporate policies, practices, and procedures to ensure that www.alastin.com becomes and remains accessible to blind and visually impaired users. Without remediation, Plaintiff and other blind consumers remain excluded from equal participation in Defendants' online marketplace.

**JURISDICTION & VENUE**

17. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

18. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy

as Plaintiff's federal ADA claims.

19. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in Bronx County, accessed Defendant's Website, www.alastin.com from within this District, and experienced the discriminatory barriers alleged herein within Bronx County. Courts in this Circuit have repeatedly held that venue is proper where a plaintiff encounters website accessibility barriers. See *Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); see also *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

20. Defendant is subject to personal jurisdiction in this District because it purposefully directs business activities toward New York consumers through its highly interactive ecommerce Website, www.alastin.com which allows users to browse inventory, review product information, select sizes and colorways, create accounts, and complete purchases. Defendant ships products directly to New York residents and derives substantial revenue from sales to consumers in this State. Courts in this Circuit have consistently held that operators of nationwide ecommerce websites are subject to personal jurisdiction in New York when they purposefully avail themselves of the privilege of conducting business here. See *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

21. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online.

22. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

23. Plaintiff **Kelly McLean** is, and at all relevant times was, a resident of Bronx County, New York. Ms. McLean is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the protections afforded under New York State and New York City law. As confirmed by her treating optometrist at Bronx Eye Associates, Ms. McLean has been diagnosed with Bietti's Crystalline Dystrophy, a rare inherited retinal degenerative disorder that has caused progressive retinal deterioration, constricted visual fields, impaired night vision, and "severe reduction in functional sight." Her provider further confirms that Ms. McLean is now and that her condition is permanent, irreversible, and progressive; "almost completely blind, with only minimal residual perception of light and shapes,"

24. Plaintiff is a proficient user of screen-reader technology, including NVDA, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because she cannot visually interpret printed or digital information without assistive technology, Ms. McLean depends on businesses to design, construct, and maintain their websites in a manner that is compatible with screen-reading software.

25. For Ms. McLean, accessible online shopping is essential to her independence. As a legally blind consumer, she cannot visually browse retail stores or product displays without assistance. She therefore relies heavily on accessible ecommerce websites to pre-shop, research, evaluate, and purchase products suitable for her mobility and safety needs. When websites lack proper alternative text, labeled controls, or navigable structure, Ms. McLean is unable to obtain the same information available to sighted shoppers and is denied equal access to the digital marketplace.

**Defendant – Alastin Skincare, Inc.**

26. Defendant **Alastin Skincare, Inc.** is a Delaware corporation with its principal place

of business located at **3129 Tiger Run Court, Suite 109, Carlsbad, California 92010**. Alastin Skincare, Inc. owns, operates, and controls the Website **www.alastin.com**, which provides consumers nationwide—including those in New York—with access to skincare products, clinical claims, promotional materials, and purchasing functionality.

27. Alastin Skincare, Inc. is a "public accommodation" within the meaning of Title III of the ADA, 42 U.S.C. §12181(7), the NYSHRL, and the NYCHRL.

**Defendant – Galderma Laboratories, L.P.**

28. Defendant **Galderma Laboratories, L.P.** is a global dermatology company headquartered in Texas and operating throughout the United States. Upon information and belief, Galderma Laboratories, L.P. **owns, controls, or operates Alastin Skincare, Inc. as a corporate affiliate or subsidiary**, and exercises oversight over ALASTIN's branding, digital marketing, ecommerce operations, and consumer-facing skincare division.

29. RocketReach publicly identifies ALASTIN as **"Alastin Skincare, a Galderma Company,"** confirming the corporate affiliation. Additionally, the Website's footer prominently displays **"GALDERMA – EST. 1981,"** demonstrating Galderma's branding, operational involvement, and control over the Website's consumer-facing content.

## STATEMENT OF FACTS

***Plaintiff's Attempts to Access Defendant's Websites***

30. On **June 11, 2026**, **June 13, 2026**, and **August 12, 2026**, Plaintiff **Kelly McLean** attempted on three separate occasions to access Defendants' retail ecommerce Website, **www.alastin.com**, using the NVDA screen reader on her home computer in Bronx County. Because Ms. McLean is "almost completely blind, with only minimal residual perception of light and shapes," she cannot visually browse physical retail stores, read product packaging, compare formulations, or evaluate skincare products in person. As a result, she relies entirely on accessible

ecommerce websites to research, compare, and purchase skincare independently. Plaintiff visited Defendants' Website for the specific purpose of evaluating clinically tested anti-aging skincare suitable for her daily medical and functional needs but was unable to do so due to pervasive accessibility barriers.

31. Plaintiff specifically attempted to research several ALASTIN products, including **Restorative Skin Complex with TriHex+™**, **Ultra Nourishing Moisturizer**, **A-LUMINATE Brightening Serum**, and **HydraTint Pro Mineral Sunscreen SPF 36**. As a blind individual with severe retinal degeneration, Ms. McLean experiences chronic dryness, sensitivity, and difficulty managing skin health due to her condition. She requires gentle, clinically validated formulations and must rely on detailed product descriptions, ingredient lists, usage instructions, and clinical claims to make informed decisions. Because she cannot visually inspect products in physical stores, she depends entirely on accessible website content to understand product features, formulation differences, clinical benefits, and suitability for her condition.

32. Plaintiff attempted to review product names, descriptions, clinical claims, ingredient lists, pricing, subscription options, and shipping information. She also attempted to use the Website's navigation menus, category filters, and product-detail pages. However, the WAVE Accessibility Reports identified **missing alternative text**, **missing form labels**, **empty buttons**, **empty links**, **broken ARIA references**, **invalid ARIA attributes**, **unlabeled interactive elements**, **contrast failures**, and **inaccessible dynamic content** across the very pages Plaintiff attempted to access. These defects created concrete barriers for Plaintiff, including:

- Product images announced only as "image," with no descriptive alt text, preventing Plaintiff from identifying shoe style, color, or features.

- Interactive elements announced only as “button,” “link,” or “blank,” without context, preventing Plaintiff from understanding their purpose.
- Improper ARIA roles and broken ARIA references that disrupted the page’s structure and prevented Plaintiff from forming a coherent mental map of the Website.
- Missing form labels that prevented NVDA from identifying subscription options, quantity selectors, or “Add to Bag” functionality.
- Contrast failures and missing focus indicators that made keyboard navigation inconsistent and disorienting.
- Dynamic pop-ups and moving carousel content that lacked screen-reader alerts or pause/stop controls, causing disorientation and navigation loss.

As a result, Plaintiff could not reliably navigate the product listings or select any item for further review.

33. Plaintiff also attempted to access additional product categories—including **Anti-Aging**, **Serums**, **Moisturizers**, **Suncare**, and **Best Sellers**—because these pages contained overlapping listings and similar navigation components. The WAVE reports documented missing alternative text, empty ARIA role buttons, invalid ARIA attributes, unlabeled links, improper list structure, inaccessible tab panels, and moving content without controls across these pages. These failures caused NVDA to read interactive elements as “button,” “link,” or “blank,” without context, preventing Plaintiff from identifying or comparing products.

34. On each of the three dates, Plaintiff attempted to evaluate ALASTIN’s clinically tested anti-aging products to determine whether they met her medical and functional skincare needs. Because the Website lacked accessible coding, Plaintiff was unable to obtain the same information available to sighted users and could not complete a purchase.

**Systemic Barriers Confirmed by WAVE**

35. On **May 25, 2026**, Plaintiff's counsel conducted automated accessibility audits of **www.alastin.com** using the WAVE Web Accessibility Evaluation Tool from counsel's office in New York. The scans evaluated the Website's product pages, category pages, navigation menus, promotional pages, clinical-study pages, and interactive components, including the specific pages Plaintiff attempted to access. The resulting reports identified:

-  **33 Errors** on the Anti-Aging Skincare Products page
-  **73 Errors** on the ALASTIN Skincare homepage
-  **88 Errors** on the Restorative Skin Complex product page

These errors included missing alternative text, empty buttons, empty links, broken ARIA references, invalid ARIA attributes, unlabeled form controls, inaccessible dynamic regions, improper heading structure, and severe contrast failures. These findings confirm that the barriers Plaintiff encountered were systemic, widespread, and present throughout the Website at the time of her attempts to access it.

36. The combination of missing alternative text, unlabeled and orphaned form controls, broken ARIA references, improper heading structure, contrast failures, empty buttons, redundant links, and non-functional navigation prevents blind users from perceiving, navigating, and interacting with the Website on equal terms with sighted users.

37. The WAVE reports further identified moving carousel content lacking pause/stop controls, dynamic pop-ups without screen-reader alerts, and interactive elements without accessible names—each of which violates WCAG 2.1 and prevents blind users from safely navigating the site. These failures created additional barriers:

-  NVDA announced interactive elements as "button," "link," or "blank," without context.

 Product cards were read as a confusing sequence of unlabeled links and repeated text.

 Improper ARIA roles caused NVDA to skip or repeat sections, making navigation unpredictable.

 Missing alternative text prevented Plaintiff from identifying product differences or selecting items for comparison.

 Dynamic content changed without warning, causing disorientation and loss of navigation focus.

38. On each of the three dates, Plaintiff attempted to evaluate ALASTIN's anti-aging skincare products to determine which would best address her dryness, sensitivity, and texture concerns associated with her degenerative ocular condition. Because the Website lacked accessible coding, Plaintiff was unable to obtain the same information available to sighted users and could not complete a purchase.

**Prior Litigation Demonstrating Ongoing Non-Compliance**

39. Defendants were previously sued in *Campbell v. Alastin Skincare, Inc.,* No. 1:23-cv-03671 (S.D.N.Y.)**,** for substantially similar accessibility barriers. Despite that litigation, Defendants have failed to remediate their Website. The persistence of identical accessibility defects across multiple pages and multiple WAVE audits demonstrates a systemic disregard for blind and visually impaired users.to obtain the same information available to sighted users and could not complete a purchase.

**Plaintiff's Concrete Injury and Intent to Return**

40. Plaintiff's injuries are concrete, particularized, and ongoing. Plaintiff attempted to access Defendants' Website for the specific purpose of purchasing clinically tested anti-aging skincare necessary for her medical condition and daily functioning. Her shopping objectives were

personal, medically necessary, and tied to specific products she attempted to review.

41. Plaintiff remains highly interested in purchasing ALASTIN products and intends to return to the Website as soon as it is made accessible. Her intent to return is credible because:

- She continues to require gentle, clinically validated skincare due to her degenerative ocular condition.
- Defendants offer specific products (including Restorative Skin Complex, Ultra Nourishing Moisturizer, and A-LUMINATE Brightening Serum) that Plaintiff has been unable to evaluate elsewhere.
- She has no alternative means of independently evaluating these products without an accessible Website.
- She has demonstrated a history of attempting to access the Website for the purpose of making a purchase.

42. Defendants' ongoing operation of an inaccessible Website deters Plaintiff from attempting to use it again until it is remediated. Plaintiff's injury is ongoing because Defendants have no policy or plan to ensure accessibility, and the barriers she encountered remain uncorrected.

43. Defendants' failure to design, construct, maintain, and operate their Website in a manner compatible with screen-reader technology constitutes discrimination under Title III of the ADA. Defendants' inaccessible Website denies blind consumers equal access to the goods and services it offers to the general public and prevents blind users from participating in the digital marketplace on equal terms.

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

All legally blind individuals in the United States who have attempted to access www.alastin.com and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

45. Plaintiff also seeks certification of a New York subclass consisting of:

All legally blind individuals residing in the State of New York who have attempted to access www.alastin.com and were denied equal access to the goods, services, and information offered thereon.

46. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant operates a nationwide ecommerce platform and markets its sunglasses and eyewear products to consumers throughout the United States. Upon information and belief, **thousands of blind and visually impaired individuals** have attempted to access the Website and have been denied equal access due to the systemic accessibility barriers confirmed by WAVE audits.

47. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

- Whether Defendant's Websites contains accessibility barriers that prevent blind individuals from accessing its goods and services;
- Whether Defendant's failure to make its Websites accessible violates Title III of the ADA;
- Whether Defendant's failure to maintain accessible digital content violates New York State and New York City disability rights laws;
- Whether Defendant's conduct constitutes ongoing discrimination against blind consumers; and

- Whether injunctive relief is warranted to require Defendant to bring its Websites into compliance with WCAG 2.1.

48. Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, uses screenreading software, and was denied equal access to Defendant's Websites due to the same systemic accessibility barriers identified in the WAVE reports.

49. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in ADA litigation, class actions, and digital accessibility matters.

50. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate inaccessible Websites without any policy, plan, or practice to ensure accessibility, thereby subjecting all blind users to the same discriminatory barriers.

51. Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate its Websites in compliance with WCAG 2.1, and because Defendant's actions apply generally to all blind individuals who attempt to use the Websites. Declaratory and injunctive relief is the only appropriate remedy to ensure equal access for Plaintiff and the Class.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

52. Plaintiff **KELLY MCLEAN**, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

53. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

No individual shall be discriminated against on the basis of disability in the full and

> equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

54. Defendant's Website, www.alastin.com, is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

55. Defendant has failed to design, construct, maintain, and operate its websites in a manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

56. Defendant's Website, www.alastin.com, is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

57. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

58. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities,

> privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

59. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)–(2)(A). Plaintiff has been denied full and equal access to Defendant's Website, www.alastin.com, has not been provided services that are provided to nondisabled patrons, and has been provided services that are inferior to those provided to nondisabled persons.

60. Defendant has failed to take any prompt or equitable steps to remedy the discriminatory conduct, and the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility failures through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

61. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

62. Plaintiff, **KELLY MCLEAN,** on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

63. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

64. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

65. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.alastin.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

66. Plaintiff has visited the Websites on a number of occasions and has encountered barriers to him access that exist.

67. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

68. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities,

privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

69. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating websites that are inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of these sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

70. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

71. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business

entities and government agencies to ensure websites are accessible.

72. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

73. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

74. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

75. Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

76. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes Defendant denies, that Defendant's websites contains access barriers denying blind customers full and equal access to the products, services, and facilities offered throughout the websites.

77. A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

**<u>THIRD CAUSE OF ACTION</u>**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

78. Plaintiff, **KELLY MCLEAN,** on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

79. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

80. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

81. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

82. § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

83. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.alastin.com, are places of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

84. Defendant intentionally and willfully failed to remove the barriers on their Websites, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

85. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

86. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court

of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id..*.

87. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

88. Plaintiff, **KELLY MCLEAN,** on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

89. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

90. Defendant is subject to NYCHRL because it owns and operates the Website, www.alastin.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

91. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

92. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating

based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

93. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained Website that are inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained Website that are sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

94. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

95. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Websites under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

96. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

97. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines

under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

98. Plaintiff is also entitled to reasonable attorneys' fees and costs.

99. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

100. Plaintiff, KELLY MCLEAN, on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

101. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that their Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq*., prohibiting discrimination against the blind.

102. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq.;

- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.alastin.com, fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;
- A declaration that Defendant owns, maintains, controls, and/or operates its website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing her counsel as Class Counsel;
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
September 24, 2026

Respectfully submitted,

*/s/ Robert Schonfeld*
Robert Schonfeld, Esq.
**Joseph & Norinsberg, LLC**
Attorneys for Plaintiff
825 Third Avenue, Suite 2100
New York, New York, 10022
Tel. No. (212) 227-5700
Fax No. (212) 656-1889
rschonfeld@employeejustice.com